UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HEALIX INFUSION THERAPY, INC., | § | |
|   Plaintiff and Counter Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-2072 |
| | § | |
| HELIX HEALTH, LLC, and STEVEN MURPHY, | § | |
|   Defendants and Counter Plaintiffs. | § | |

**MEMORANDUM AND ORDER**

This case comes before the Court on the First Amended Motion for Summary Judgment [Doc. # 49] ("Plaintiff's Motion")[1] filed by Plaintiff and Counter Defendant Healix Infusion Therapy, Inc. ("HIT" or "Plaintiff") and the Motion for Partial Summary Judgment [Doc. # 51] ("Defendants' Motion")[2] filed by Defendants and Counter Plaintiffs Helix Health, LLC and Steven Murphy ("Defendants"). After carefully considering the parties' submissions, applicable legal authorities, and all

---

[1]   Defendants filed a Response [Doc. # 57] ("Defendant's Response") and Objections to Plaintiff's Summary Judgment Evidence [Doc. # 58]. Plaintiff also filed a Supplement [Doc. # 52] ("Plaintiff's Supplement").

[2]   Plaintiff filed a Response [Doc. # 61] with exhibits [Doc. # 63] (Plaintiff's Response").

pertinent matters of record, the Court **denies** Plaintiff's Motion and **grants in part** and **denies in part** Defendants' Motion.

## I.   FACTUAL BACKGROUND

This case arises from a previous lawsuit filed by Plaintiff against Defendants. Plaintiff Healix Infusion Therapy**,** is a provider of "drug compounding, infusion therapy and practice management services to physicians."[3]   HIT, which is based in Sugar Land, Texas, asserts that it is the owner of several federally registered trademarks including, "HEALIX" and "Healix Health Services."   Defendant Steven Murphy is a Connecticut physician and owner of Helix Health LLC, now known as The Personalized Medicine Group of Connecticut, LLC ("Helix Health").

In January 2008, HIT filed suit against Helix Health and Murphy.   *See Healix Infusion Therapy, Inc. v. Helix Health, LLC*, *et al.*, Civil Action No, 4:08-0337 (S.D. Tex. filed January 30, 2008) ("Underlying Litigation").   HIT raised claims for trademark infringement and dilution, as well as fraud and cybersquatting. With the exception of the cybersquatting claim, the court, Judge Lake presiding, dismissed HIT"s claims for lack of personal jurisdiction.[4]   Judge Lake subsequently granted

---

[3]      Plaintiff's Motion, at 1-2.

[4]      *See* Memorandum and Order [Doc. # 37] in Underlying Ligation.

summary judgment in Murphy's favor on the cybersquatting claim[5] and entered a final judgment dismissing HIT's claims with prejudice and taxing costs against HIT.[6]

HIT appealed the judgment. While the appeal was pending, on May 1, 2009, the parties entered into a Settlement Agreement.[7]  As part of the Settlement Agreement, HIT agreed to pay $7,500 to Helix Health and Murphy, withdrew its appeal, and agreed to not bring further suit against the two defendants for trademark infringement. In exchange, Helix Health and Murphy agreed to abandon a pending trademark application for "Helix Health" and to cease within 30 days all use of "Helix Health," Helix," and any "derivative thereof" except that Murphy would be permitted to use the following identifiers: "(1) Helix Health of Connecticut," "(2) Helix Health of Delaware, and (3) Helix Health of New York."[8]  This "Cessation of Use" clause of the Settlement Agreement further provided that Helix Health and Murphy would have "six months to change the corporate name of Helix Health LLC to allow for notice and transition of name changes and payments by third party payors."[9]  The Settlement

---

[5]      *See* Memorandum and Order [Doc. # 67] in Underlying Litigation.

[6]      *See* Final Judgment [Doc. # 68] in Underlying Litigation.

[7]      *See* Notice of Settlement [Doc. # 122] in Underlying Litigation; Settlement Agreement, Exh C. to Plaintiff's Motion ("Settlement Agreement").

[8]      Settlement Agreement, ¶ 2.

[9]      *Id.*

Agreement also provided for the transfer of certain Internet domain names from Helix Health and Murphy to HIT and for the rerouting of associated emails to Murphy's new email address.[10]

Approximately two months after the parties entered into the Settlement Agreement, Plaintiff filed this suit alleging that Defendants have continued to use the identifier "Helix" in violation of the Cessation of Use clause.  Plaintiff asserts claims for breach of the Settlement Agreement and for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114, 1125.  Defendants, alleging that Plaintiff intercepted emails intended for Murphy following the domain transfer, bring counterclaims for breach of the Settlement Agreement, invasion of privacy, violations of the Federal Wiretap Act, 18 U.S.C. § 2520, and violations of the Federal Stored Communications Act, 18 U.S.C.  § 2707.[11]

The parties have cross moved for summary judgment on the breach of contract claim.  Plaintiff has also moved for summary judgment on the trademark infringement

---

[10]     *Id.,* ¶¶ 3,4.

[11]     Defendants' live pleading, their Second Amended Original Answer, incorporates by reference their counterclaims, which were first asserted in the First Amended Answer and Counterclaim.  *See* Second Amended Original Answer [Doc. # 45], ¶ 64; First Amended Answer and Counter Claim [Doc. # 28], at 7-13.  Defendants at one time asserted a claim under Chapter 143 of the Texas Civil Practices and Remedies Code. However, Defendants have withdrawn this claim, and it is accordingly **dismissed**. *See* Defendants' Response, at 27 n.6.

claim and all of Defendants' counterclaims.  Defendants additionally seek summary judgment on five other discreet issues addressed below.

## II.     **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex*, 477 U.S. at 322−23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving

party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See*

*Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the

non-movant's burden.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*,

530 F.3d 395, 399 (5th Cir. 2008).  Instead, the nonmoving party must present specific

facts which show "the existence of a genuine issue concerning every essential

component of its case."  *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343

F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the

absence of any proof, the court will not assume that the non-movant could or would

prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*,

497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and

must disregard all evidence favorable to the moving party that the jury is not required

to believe.  *See Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 229 (5th Cir. 2010)

(citing *Reaves Brokerage Co.*, 336 F.3d at 412-413).  The Court is not required to

accept the nonmovant's conclusory allegations, speculation, and unsubstantiated

assertions which are either entirely unsupported, or supported by a mere scintilla of

evidence. *Id*. (citing *Reaves Brokerage*, 336 F.3d at 413).  Affidavits cannot preclude

summary judgment unless they contain competent and otherwise admissible evidence.

*See* Fed. R. Civ. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th

Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex.

2003).  A party's self-serving and unsupported statement in an affidavit will not defeat

summary judgment where the evidence in the record is to the contrary.  *See In re*

*Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported

claim that she lacked the requisite intent is not sufficient to defeat summary judgment

where the evidence otherwise supports a finding of fraud."  (citation omitted)).

"When evidence exists in the summary judgment record but the nonmovant

fails even to refer to it in the response to the motion for summary judgment, that

evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393,

405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift

through the record in search of evidence to support a party's opposition to summary

judgment." *See id.* (internal citations and quotations omitted).

Finally, when evaluating cross motions for summary judgment, the

"[c]ross-motions must be considered separately, as each movant bears the burden of

establishing that no genuine issue of material fact exists and that it is entitled to

judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d

533, 538-39 (5th Cir. 2004) (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER

& MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 1998)

("WRIGHT")).  "But if there is no genuine issue and one or the other party is entitled

to prevail as a matter of law, the court will render judgment."  WRIGHT, § 2720.

## III.   ANALYSIS

### A.   Breach of Contract

Plaintiff asserts that Defendants have breached the underlying Settlement

Agreement by continuing to use the "Helix" identifier in violation of the Cessation of

Use clause.  Under Texas law, "'[t]he essential elements of a breach of contract action

are: (1) the existence of a valid contract; (2) performance or tendered performance by

the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained

by the plaintiff as a result of the breach.'"  *Smith Intern., Inc. v. Egle Group, LLC*, 490

F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l,*

*L.L.C.*, 51 S.W.3d 345, 351 (Tex.App.—Houston [1st Dist.] 2001, no pet.).

Defendants seek dismissal of the breach of contract claim because Plaintiff cannot

prove the fourth element.  Regarding the first of the three elements of the cause of

action, Defendants do not dispute that the Settlement Agreement is a valid contract.

Defendants do not contest the second element; they concede that Plaintiff has

"substantially performed" the Settlement Agreement other than having breached "at

least two terms" that apparently for the purposes of the Motion Defendants deem

immaterial.[12]   Finally, Defendants concede for present purposes only that Plaintiff "may be able to prove a technical breach" of the Settlement Agreement.[13]   Thus, only the fourth element of a breach of contract cause of action, *i.e.*, whether Plaintiff sustained damage as a result of the breach, is at issue.

### 1.    Damage as a Result of the Breach

Plaintiff asserts as to monetary damage that it has been damaged by Defendants' breach of the Settlement Agreement because Plaintiff paid $7,500 as part of that agreement and abandoned its appeal of Judge Lake's rulings in the Underlying Litigation.   Plaintiff urges that it bargained for Defendants' cessation of use of identifiers that Plaintiff believes infringe on its marks.   Further, Plaintiff asserts that any violations of the Cessation of Use clause in fact constitute trademark infringement and are thus damaging to Plaintiff.   Finally, Plaintiff argues that it was forced to bring this lawsuit to enforce the Settlement Agreement and has incurred attorney's fees and other litigation costs as a result.

Defendants counter that Plaintiff has produced no evidence that it has suffered legally cognizable damages as a result of any breach.   Defendants note that in response to their interrogatory directing Plaintiff to "identify the type and amount of

---

[12]     Defendants' Motion, at 6.

[13]     *Id.*

each element of damages [HIT] contend[s] were caused by Defendants' alleged breach of the Settlement Agreement," Plaintiff stated: "$7,500 in fees originally paid as part of the Settlement Agreement, attorneys' fees and 37 hours of work for Healix's IT Department at $150.00/hour."[14]  Defendants argue that Plaintiff cannot recover the $7,500 paid as part of Settlement Agreement because Plaintiff is seeking to enforce that agreement, not rescind it.  Arguing that actual damages for a breach of contract are only available for losses that are the foreseeable consequence of the breach, Defendants contend that "[c]onsideration paid in the formation of a contract cannot be a loss as a *consequence* of a subsequent breach."[15]  Defendants also argue that attorney's fees cannot be recovered as damages for a breach of contract claim, citing *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) ("To recover attorney's fees under [Texas Civil Practice and Remedies Code § 38.001], a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages.").  Finally, Defendants argue that Plaintiff cannot recover as damages wages paid to its employees in the absence of evidence that wages actually were paid and evidence of a causal connection between the cost incurred and a breach of the Settlement Agreement.

---

[14]     *See* Interrogatory No. 2, Exh. B to Defendants' Motion, at 3.

[15]     Defendants' Motion at 12-13.

The Court is not persuaded that either party is entitled to judgment as a matter of law on the breach of contract claim.  With respect to Defendants' Motion, to the extent Defendants seek dismissal of the breach of contract claim in its entirety, the Motion is denied.  Defendants concede, for purposes of this Motion, that they have breached the Settlement Agreement by using the Helix identifier in non-permitted contexts.  Plaintiff has established on this record a fact issue that it has lost at least some intangible "benefit of the bargain" of its 2009 settlement with Defendants.  *Cf. American Rice, Inc. v. Producers Rice Mill, Inc.*, 2006 WL 1984592 at *8 (S.D. Tex. July 14, 2006) (Lake, J.).  Plaintiff gave consideration in the form of both monetary payment and the abandonment of its appeal in exchange for Defendants' promise to cease using certain identifiers.  Moreover, Texas recognizes nominal damages for breach of a contract.  *See MBM Fin. Corp. v. Woodlands Operating Co.*, L.P., 292 S.W.3d 660, 664-65 (Tex. 2009).  Plaintiff, the non-movant, apparently had to file suit to enforce the Settlement Agreement to prevent Defendants' further use of the identifiers in issue.[16]  The Court is not prepared at this point to hold as a matter of law that Plaintiff has not suffered any legally cognizable injury to support its breach of contract claim.  *Cf. Qaddura v. Indo-European Foods, Inc.* 141 S.W.3d 882, 891-92

---

[16]     On January 19, 2010, the Court entered a stipulated preliminary injunction enjoining Defendants from using the terms "Healix," "Helix," or "Helix Health."  *See* Stipulated Preliminary Injunction [Doc. # 43].

(Tex.App.—Dallas 2004, pet. denied) (when a trademark infringement plaintiff entered into a settlement agreement releasing its claim, what it bargained for was "the peaceable enjoyment of its trademark, without conduct that would infringe on that trademark"). Defendants' Motion is accordingly denied to this extent.

However, Defendants are correct that Plaintiff has not provided any admissible evidence of reasonably ascertainable monetary damages incurred as a result of Defendants' alleged breach of the Settlement Agreement. "Compensatory damages may only be recovered in a claim for breach of contract when the loss is a 'natural, probable, and foreseeable consequence of the defendant's conduct.'" *Employees Retirement Sys. of Texas v. Putnam, LLC,* 294 S.W.3d 309, 318 (Tex.App.—Austin 2009, no pet.) (citing *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex.1 981)). "A party may not recover damages for breach of contract if those damages are remote, contingent, speculative, or conjectural." *See City of Dallas v. Villages of Forest Hills, L.P., Phase I*, 931 S.W.2d 601, 605 (Tex.App.—Dallas 1996, no writ). Plaintiff seeks as actual monetary damages for its breach of contract claim primarily the $7,500 paid in the 2009 settlement.[17] However, Plaintiff supplies no legal authority that in the circumstances similar to those at bar, funds paid to a defendant

---

[17]     *See* Plaintiff's Motion, at 15.  As noted, Plaintiff's discovery responses in the summary judgment indicate that Plaintiff also seeks reimbursement of an "IT" employees' pay.

as consideration for a settlement agreement (or other contract) are a loss that is the "natural, probable and foreseeable consequence" of a subsequent breach of that contract.

Plaintiff's briefing makes clear that its focus is enforcement of the terms of the Settlement Agreement through a permanent injunction or specific performance, not rescission of the Agreement.   Plaintiff may not simultaneously seek the enforcement of a contract while also seeking recovery of consideration it paid in forming that contract.  *See Guion v. Guion*, 475 S.W.2d 865, 868 (Tex.Civ.App.— Dallas 1971, writ ref'd n.r.e.) ("The law is well settled that rescission bars the right to compel performance."); *see also Hanks v. GAB Business Services, Inc.*, 644 S.W.2d 707, 708-09 (Tex. 1982) (buyer of seller's business was required to make final installment payment even after seller had breached non compete agreement because buyer had waived any right to partially rescind the contract by treating the contract as ongoing); 26 WILLISTON ON CONTRACTS § 68:2 (4th ed. 2003) ("The right of rescission and an action for restitution, whether in assumpsit or in one of the other legal or equitable remedies, generally exist as an alternative remedy to an action for damages where there has been repudiation or a material breach of a contract.").  Accordingly, Plaintiff is not entitled to recover as damages the $7,500 it paid in the 2009 settlement.

Plaintiff also has failed to present admissible evidence of any other ascertainable monetary damages caused by a breach by Defendants of the Settlement Agreement.  Indeed, Plaintiff provides no evidence to support its contention that it incurred damage in the form of "37 hours of work for Healix's IT Department at $150.00/hour."  Plaintiff has failed to raise a genuine material fact issue on this damage theory.

Defendants seek dismissal of  Plaintiff's prayer for attorney's fees as evidence of damage.  The Court does not reach any attorney's fee issues at this time.  Texas courts have awarded attorney's fees in the absence of any monetary award.  *See, e.g. Rasmusson v. LBC PetroUnited, Inc.*, 124 S.W.3d 283, 286-87 (Tex.App.—Houston [14 Dist.] 2003, pet. denied) (fees awarded when employer granted motion to compel arbitration based on contractual clause but no money damages); *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 797 (Tex.App.—Houston [14th Dist.] 1986) (fees awarded when employer granted injunction to enforce non compete agreement but no money damages).

While the Court concludes that Plaintiff cannot recover monetary damages on its breach of contract claim, Plaintiff is nevertheless entitled to try to show entitlement to equitable relief such as specific performance or a permanent injunction.  *Cf. Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 797 (Tex.App.—Houston [14th Dist.]

1986) (holding that an employer was entitled to attorney's fees after it was granted an injunction to enforce a non compete agreement but was not awarded any monetary damages).

The Court turns to Plaintiff's summary judgment motion and concludes that Plaintiff is not entitled to judgment in its favor as a matter of law on any of its claims. Plaintiff has failed to meaningfully articulate, let alone produce evidence of, any legally cognizable theory entitling it to equitable relief as a matter of law.  For example, Plaintiff urges that any breach of the Settlement Agreement constitutes trademark infringement.  However, even assuming for purposes of the pending motions that instances of proven trademark infringement would satisfy the damages element of a breach of contract claim, Plaintiff has failed to establish that Defendants' uses of the disputed identifiers actually infringe Plaintiff's marks.[18]

Plaintiff argues that the agreed preliminary injunction entered in this case proves that it has been damaged.  The Court entirely disagrees.  Plaintiff does not explain how a *stipulated* preliminary injunction proves that Plaintiff was irreparably injured by any contract breach and thus entitled to a permanent injunction.  The injunction itself contains no language satisfying this burden.

---

[18]     As discussed below, a fact question exists as to whether Defendants' use of the identifiers in issue amounts to trademark infringement.

Finally, Plaintiff's summary judgment briefing fails to include any substantive discussion or proof supporting entitlement to a permanent injunction or specific performance.  The Court admonishes Plaintiff that, at trial, it must present probative evidence and legal authorities demonstrating how Plaintiff satisfies each element of each claim and entitlement to the remedy it seeks.[19]  Plaintiff's Motion for Summary Judgment on its breach of contract claim is denied.

## B.     __Trademark Infringement__

Plaintiff also moves for summary judgment on its trademark infringement claim under the Lanham Act.  To prevail on this claim, Plaintiff must first "'establish ownership in a legally protectible mark, and second, . . . show infringement by demonstrating a likelihood of confusion.'"  *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 (5th Cir. 2010) (quoting *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008)).  In their Response to Plaintiff's Motion, Defendants do not dispute that Plaintiff has ownership in legally protectible marks.[20]  Accordingly, only the likelihood of confusion is at issue here.  In determining whether a likelihood of confusion exists, courts in the Fifth Circuit evaluate evidence on the following "digits of confusion":

---

[19]    Defendants must be prepared to demonstrate why Plaintiff is not so entitled.

[20]    The Court notes that Plaintiff asserts that one of its trademark registrations is "incontestable," but the record cited does *not* establish this fact.

"(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers."  *See American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (citation omitted). "'Likelihood of confusion' means more than a mere possibility; the plaintiff must demonstrate a probability of confusion." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.,* 576 F.3d 221, 226-27 (5th Cir. 2000) (citing *Smack Apparel*, 550 F.3d at 478). "While likelihood of confusion is typically a question of fact, summary judgment is proper if the 'record compels the conclusion that the movant is entitled to judgment as a matter of law.'" *Id.* (citing *Smack Apparel*, 550 F.3d at 478).

Plaintiff has in no way shown entitlement to summary judgment on its trademark infringement claim.  Numerous fact questions exist that preclude the entry of summary judgment on this claim.[21]  Indeed, Plaintiff cites no evidence in support of the vast majority of the digits of confusion and devotes only four paragraphs of its briefing to this issue.[22]  Plaintiff obviously has failed to demonstrate entitlement to

---

[21]     It is highly questionable on this record that there is sufficient evidence to support a finding of likelihood of confusion as to any of the digits.

[22]     The dearth of briefing and evidence on these factors raises serious doubts about Plaintiff's ability to meet the complex burden at trial.

summary judgment on its trademark infringement claim, and Plaintiff's Motion for summary judgment on this claim is denied.

### C.      Defendants' Counterclaims

Plaintiff next moves for summary judgment on Defendants' counterclaims, which are largely based on Plaintiff's alleged interception of Defendants' emails following the transfer of certain domain names to Plaintiff as provided under the Settlement Agreement.[23] It is undisputed that following the transfer, Plaintiff received over 3,500 emails that were sent to or from email addresses associated with "helixhealth.org," one of the domain names transferred from Defendants to Plaintiff. It is also undisputed that Plaintiff opened at least three of these emails and sent them to Defendants' counsel as alleged examples of Defendants' ongoing use of the "Helix" name with respect to "third-party payors."

---

[23]      In addition to the interception of emails issue, in its First Amended Answer, Defendants assert that Plaintiff violated the Settlement Agreement by disclosing its provisions to third parties and bringing a claim for trademark infringement. Plaintiff argues in its Motion that even if it did breach the Settlement Agreement in these respects, it was relieved of its obligations because Defendants are in material breach of that contract. Defendant's Response to Plaintiff's summary judgement Motion in support of their counterclaims focuses solely on the interception of emails issue, so it is unclear if Defendants have abandoned the other two theories. In any event, Plaintiff's Motion is denied. Plaintiff has not shown as a matter of law either that Defendants have materially breached the Settlement Agreement or that they did so at a time that would excuse Plaintiff's performance.

Plaintiff argues that Defendants did not comply with the 'Rerouting of Email" clause of the Settlement Agreement and that this explains Plaintiff's receipt of the emails.  The Rerouting of Email clause provides:

> Within ten (10) days after receipt of an executed copy of this Agreement by Murphy, Healix in conjunction with Murphy or Helix Health LLC shall take whatever steps are necessary to set up an MX Record to have all emails that are received at helixhealth.org rerouted to Murphy's new email address (to be provided by Murphy). This provision is necessary to prevent any inadvertent disclosure of patient information and violation of HIPA [sic].  Healix also agrees not to set up any email address associated with (or an MX record for the DNS records for) the domains, <helixhealth.org> and <myhelixhealth.com>.[24]

Plaintiff asserts that Defendants failed to comply with the requirements of this clause by never attempting to set up an "MX Record" to enable their emails to be rerouted. Plaintiff further asserts that Murphy never provided Plaintiff with a new email address.  Thus, Plaintiff contends, emails sent to the domain names Defendants transferred to HIT automatically arrived in HIT's account.  Plaintiff relies on the affidavit of J. David Tyler, HIT's Associate Vice President of Information Technology.  Tyler avers with regard to the rerouting of emails issue that:

> The DNS entries for the domain names <helixhealth.org> and <myhelixhealth.com> were not changed.  They remain in their original state when the domain names were transferred to us.  The MX records point to GoDaddy.com's servers and any emails sent to an email address with "@helixhealth.org"  or "@myhelixhealth.com" would be sent to

---

[24]      Settlement Agreement, ¶ 4.

those servers.  Healix has no mail services associated with these domain names.[25]

Defendants respond that Plaintiff must have some email service associated with the referenced domain names because Plaintiff has been receiving emails associated with those names into its account.  Defendants also cite public registry records for "healixhealth.org" that they contend show that Plaintiff's counsel has changed the domain name records for these domains.[26]  With respect to their alleged failure to set up an MX Record for the rerouting of emails, Murphy explains that he decided not to set up such a record because he preferred that emails sent to the transferred domain names simply "bounce back" to the senders rather than be received and then transferred to a new email address.[27]  Murphy states that he made this decision because he wanted people to know that those email addresses were no longer valid and because he was concerned that if he set up an MX Record to reroute the emails, Plaintiff would have the opportunity to intercept the emails during the transfer process.[28]  Defendants argue that Murphy's decision not to set up a new record in no way excuses Plaintiff's action of opening emails intended for Defendants.

---

[25]     Affidavit of J. David Tyler, Exh. L. to Plaintiff's Motion.

[26]     Public Registry Records, Exhs. 2K-L to Defendants' Response.

[27]     Affidavit of Steven Murphy, M.D. Exh. 2 to Defendants' Response, ¶ 27.

[28]     *Id.*

Fact issues exist on Defendants' counterclaims.  Plaintiff's scant briefing,[29] and lone citation to the Tyler affidavit, are insufficient to demonstrate entitlement to judgment in Plaintiff's favor as a matter of law on these claims.  This record is replete with unexplained references to technical terms such as "MX Records" and "DNS entries."  The Court cannot divine what occurred in the wake of the transfer of the domain names, or whether Defendants' failing to set up the MX Record apparently to reroute the emails was a material breach of the Agreement, or whether Plaintiffs' opening of three emails intended for Defendants excuses any breach that may have occurred.  Plaintiff's Motion for Summary Judgment on Defendants' counterclaims is denied.

### D.    Defendants' Remaining Issues

Defendant also moves for summary judgment on five discreet issues:

[1]    Summary judgment should be entered as a matter of law on HIT's request for attorneys' fees under Chapter 38 of the Texas Civil Practice and Remedies Code because the recovery of actual damages is a condition precedent to an award of such fees, and HIT has no evidence of actual damages resulting from any purported breach of the contract.

[2]    Defendants are entitled to judgment as a matter of law on any trademark infringement claim which may have arisen prior to May 1, 2009 because HIT has waived all such claims.

---

[29]    Inappropriately, Plaintiff does not even lay out the elements of Defendants' claims.

[3]     HIT has no evidence that it is entitled to compensatory damages as a result of any purported trademark infringement, and the Court should therefore enter summary judgment for Defendants as to such element of damages.

[4]     There is no evidence that Defendants profited from any alleged trademark infringement, and they are therefore entitled to summary judgment as to such element of damages.

[5]     Plaintiff cannot meet its burden to prove that this is an "exceptional case" under 15 U.S.C. § 1117, and the Court should therefore grant summary judgment on this issue.[30]

Defendants' issues [1] and [5] relate to attorney's fees.  Because the Court does not grant summary judgment on either of Plaintiff's breach of contract or trademark infringement claims, and because the Court does not endorse Defendants' argument that proof of monetary damages is a necessary predicate for an attorney's fee award under Texas contract law, the Court does not reach the issue of Plaintiff's entitlement to attorneys' fees for its claims.  Defendants' Motion is therefore denied to this extent.[31]  The Court addresses Defendants' remaining issues in turn.

### 1.      Trademark Infringement Claims Arising Before May 1, 2009

Defendants assert that Plaintiff has waived any claim it may have for trademark infringement arising prior to May 1, 2009, the date the parties entered the Settlement

---

[30]    Defendants' Motion, at 8.

[31]    For the same reason, the Court does not reach Defendants' Objections to Plaintiff's Summary Judgment Evidence.

Agreement.  In response to written discovery from Defendants asking Plaintiff to

"state the facts" upon which it based its contention that it is entitled to pursue

trademark infringement claims for alleged acts of infringement prior to May 1, 2009,

Plaintiff stated: "[HIT] is not pursuing claims for trademark infringement prior to May

1, 2009.[32]  Plaintiff did not respond to Defendants' Motion on this point, and did not

otherwise direct the Court to any evidence of acts of trademark infringement occurring

prior to May 1, 2009.  Defendant is entitled to summary judgment on this issue.

### 2. Evidence that Plaintiff is Entitled to Compensatory Damages

Defendants argue for summary judgment on the issue that Plaintiff is not

entitled to compensatory damages for any purported acts of trademark infringement.

Defendants cite Plaintiff's response to an interrogatory asking Plaintiff to identify the

type and amount of damage it contends was caused by Defendants' alleged trademark

infringement.  Plaintiff responded: "[HIT] cannot quantify the damages for trademark

infringement (excluding attorney's fees) and therefore it pursue[s] injunctive relief."[33]

Plaintiff did not respond to this aspect of Defendant's Motion and there is no

indication in Plaintiff's briefing that it seeks compensatory damages as opposed to

---

[32]     Interrogatory No. 6, Exh. B. to Defendants' Motion, at 4.

[33]     Interrogatory No. 8, Exh B. to Defendants' Motion, at 4.

injunctive relief for the trademark infringement claim.  Defendant is entitled to summary judgment on this issue.

### 3. Evidence that Defendants Made any Profit from any Trademark Infringement

Finally, Defendants seek summary judgment on the issue that there is no evidence that they (Defendants) made any profit from any purported trademark infringement.  Defendants point out that there is no evidence in the record to establish that they profited or made any unjust gains as a result of any alleged infringement. Plaintiff did not respond to Defendants' Motion on this point and produced no evidence to support any such damages.  Defendant is accordingly entitled to summary judgment on this issue.

## IV.    CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion for Summary Judgment [Doc. # 49] is **DENIED** in all respects.  It is further

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 51] is **GRANTED in part** and **DENIED in part** as follows: Defendants' Motion is **granted** as to monetary damages Plaintiff has specified on its breach of contract claim. Defendants' Motion is additionally granted in that Plaintiff has waived any claim for trademark infringement based on acts prior to May 1, 2009.  Defendants' Motion is

also granted insofar as Plaintiff is not entitled to compensatory damages for any acts of trademark infringement, and Plaintiff has failed to show that Defendants profited or received unjust gains as a result of any trademark infringement.  Defendants' Motion is in all other respects **DENIED**.  It is further

**ORDERED** that the parties shall file the Joint Pretrial Order on **August 20, 2010**, and appear for docket call on **September 2, 2010,** at **9:30 a.m.**

SIGNED at Houston, Texas, this **12<u>th</u>** day of **August, 2010.**

Nancy F. Atlas
United States District Judge